**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **FLORENCE B. KROMA, #22,733-078** | § | |
| | § | **Civil Action No. 4:18-cv-823** |
| **v.** | § | **Criminal Action No. 4:14-cr-165** |
| | § | |
| **UNITED STATES OF AMERICA** | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Movant Florence B. Kroma ("Movant"), proceeding *pro se*, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, challenging her Eastern District of Texas, Sherman Division conviction (the "Motion"). *See* Civ. Dkt. 1. On March 19, 2019, this matter was reassigned to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge. *See* Civ. Dkt. 4.

## I.     BACKGROUND

On October 8, 2014, a Grand Jury returned an Indictment charging Movant in Counts One through Three with violations of 18 U.S.C. § 1347 (Health Care Fraud). *See* Crim. Dkt. 1. The Grand Jury then returned a First Superseding Indictment, which charged Movant in Counts One through Nine with violations of 18 U.S.C. § 1347 (Health Care Fraud) and § 2 (Health Care Fraud Aiding and Abetting). *See* Crim. Dkt. 24.

The First Superseding Indictment alleged Movant devised and intended to devise a scheme and artifice to defraud the Medicare program to obtain money and property. *See id.* at 7–8. It alleged Movant submitted, or caused to be submitted, materially false and fraudulent Medicare claims, in which Movant reported the provision of health services and sought reimbursement for

the services, despite knowing such services were neither delivered nor provided. *See id.* Each Count pertains to a different scheme to submit false Medicare claims. *See id.* at 10.

Movant made an Initial Appearance before United States Magistrate Judge Don D. Bush, who arraigned Movant and accepted Movant's plea of not guilty. *See* Crim. Dkts. 8, 12. On January 5, 2015, Movant appeared before United States District Judge Richard A. Schell for a pretrial conference. *See* Crim. Dkt. 17. The case was then transferred to United States District Judge Marcia A. Crone, who set a deadline to submit plea agreements for November 20, 2015, and set trial for December 14, 2015. *See* Crim. Dkts. 18, 30. The parties never filed a notice of plea agreement, and the case proceeded to a jury trial. *See* Crim. Dkts. 30, 48, 49, 50, 56. After a four-day trial, the jury returned a verdict finding Movant guilty on Counts One through Nine in the First Superseding Indictment. *See* Crim. Dkts. 48, 49, 50, 56, 57.

On August 3, 2016, District Judge Crone held a sentencing hearing and entered a sentence of ninety-seven (97) months' imprisonment for each Count, to be served concurrently. *See* Crim. Dkt. 64. The Court also ordered three (3) years of supervised release on Counts One through Nine, to run concurrently, and ordered a special assessment of $900.00 and restitution of $775,099.09, with interest waived. *See id.* Five days later, the Court entered Judgment against Movant. *See* Crim. Dkt. 68.

Movant then appealed her sentence to the United States Court of Appeals for the Fifth Circuit. *See* Crim. Dkt. 70. On April 3, 2018, the Fifth Circuit held the Court erred by awarding restitution for losses outside of the temporal scope alleged in the First Superseding Indictment. *See United States v. Kroma*, 717 F. App'x 490, 491 (5th Cir. 2018). In so holding, the Fifth Circuit vacated the Court's restitution award and remanded the matter for recalculation. *See id.* "In all other respects," the Fifth Circuit affirmed Movant's conviction and sentence. *Id.*

The Court then entered an Amended Judgment, which imposed the same terms of imprisonment, supervised release, and special assessment, but reduced Movant's restitution owed from $775,099.09 to $675,153.06. *See* Crim. Dkt. 105.

On November 20, 2018, Movant filed the present Motion, to which the Government filed a response and Movant filed a reply. *See* Civ. Dkts. 1, 5, 7. Movant then filed a Notice informing the Court she was released from Federal Medical Center Carswell in Fort Worth, Texas, and is currently serving her sentence on home confinement in Denton, Texas. *See* Civ. Dkt. 8; Crim. Dkt. 113. Movant also filed a Correspondence, wherein Movant represents "the prosecution stated that two [2] years were added to my sentence in error." *See* Civ. Dkt. 9. Because the Court felt further development of the record was necessary, the Court ordered the Government to file a supplemental brief and ordered Movant's trial counsel, Kenneth Weatherspoon ("Weatherspoon"), to file an affidavit. *See* Civ. Dkts. 10, 13, 14. Both the Government and Weatherspoon timely filed their supplemental materials. *See* Civ. Dkts. 11, 15.

In total, Movant raises fourteen (14) grounds for habeas relief (collectively, the "Grounds"), thirteen (13) of which relate to the performance of Movant's attorneys at the trial and appellate levels. *See* Civ. Dkts. 1, 1-1. Movant contends these thirteen (13) "failures" on counsels' part amount to ineffective assistance of counsel under the Sixth Amendment. *See id.* As to the fourteenth ground for postconviction relief, Movant avers the Government "conceded" that two (2) sentencing points were added to her sentencing guideline calculation in error. *See* Civ. Dkt. 9. Movant's fourteen (14) arguments are:

(1)    Counsel failed to communicate with Movant in general;

(2)    Counsel failed to fully inform Movant about the advantages and disadvantages of pleading guilty versus proceeding to trial;

(3)    Counsel failed to inform Movant about his trial strategy;

(4)    Counsel failed to file any substantive pretrial motions;

(5)    Counsel failed to conduct an adequate and independent pretrial investigation;

(6)    Counsel failed to attempt to negotiate a favorable plea agreement;

(7)    Counsel failed to call certain witnesses and present certain evidence at trial;

(8)    Counsel conducted a poor direct examination of Movant's witness;

(9)    Counsel failed to "properly" cross-examine a government witness;

(10)  Counsel failed to review, discuss, and explain the presentencing report to Movant prior to the sentencing hearing;

(11)  Counsel failed to file substantive objections to the presentencing report;

(12)  Counsel failed to communicate with Movant regarding direct appeal;

(13)  Counsel's failed to "[r]aise stronger issues" on appeal; and

(14)  Movant's sentence should be reduced by two (2) points.

*See* Civ. Dkt. 1 at 4; Civ. Dkt. 1-1 at 18–19, 33; Civ. Dkt. 9.

## II.       FEDERAL HABEAS PROCEEDINGS STANDARD

As a preliminary matter, it should be noted that a § 2255 motion is collateral attack that is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). A movant in a § 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is exceedingly narrow. A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297,

1300–01 (5th Cir. 1992). The collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction must satisfy two components. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must establish that counsel's performance was deficient. *Id.* This requires showing counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Id.* As to the second prong for ineffective assistance, the defendant must show counsel's deficient performance prejudiced the defendant. *Id.* This requires showing "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Put another way, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Movant must "affirmatively prove," not just allege, prejudice. *Id.* at 693.

"Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700. A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

## A.  GROUND 1 – INADEQUATE COMMUNICATION, GENERALLY

Movant complains Weatherspoon, her trial attorney, did not reasonably communicate with her throughout the case, thereby depriving Movant of "effectively participat[ing] in her defense." *See* Dkt. 1-1 at 16–17. Movant claims Weatherspoon would not return her phone calls or text messages and only visited her two (2) or three (3) times. *See id.* at 17.

As the Fifth Circuit has noted, "brevity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel." *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984) (citing *Jones v. Wainwright*, 604 F.2d 414, 416 (5th Cir. 1979)). Inadequate time spent is only relevant insofar as it raises questions about an attorney's ability to develop additional evidence or defenses. *See Schwander v. Blackburn*, 750 F.2d 494, 499 (5th Cir. 1985). In *Murray*, counsel spoke to the defendant only once prior to trial for twenty (20) minutes. *See* 736 F.2d at 282. The Fifth Circuit found the relevant facts "could have easily been conveyed" by the defendant to the attorney in twenty (20) minutes due to the case's lack of complexity. *See id.* at 283. Because the defendant did not elucidate what additional evidence or defenses could have been produced had additional conversations taken place, the Fifth Circuit held the defendant did not meet his burden to show a twenty-minute conversation amounted to ineffective assistance. *See id.* at 283.

Since *Murray*, other district courts have similarly held. *See, e.g.*, *Schwander*, 750 F.2d at 499 (meeting with defendant once, for fifteen (15) minutes, before trial did not constitute ineffective assistance because defendant had one and a half days during trial to confer about the case); *Cajeli v. United States*, No. 4:17-cv-831-MAC, 2020 WL 1650823, at *5 (E.D. Tex. Mar. 26, 2020) (meeting with defendant on only two (2) occasions, alone, did not establish ineffective assistance); *Elliott v. United States*, No. 4:16-cv-621-KPJ-MAC, 2019 WL 3890161, at *5 (E.D.

Tex. June 26, 2019) (same, but four (4) meetings over twenty-four (24) months), *report and recommendation adopted*, 2019 WL 3858662 (E.D. Tex. Aug. 16, 2019); *Burke v. Stephens*, No. 3:16-cv-118, 2018 WL 4095072, at *4 (S.D. Tex. Aug. 28, 2018) (same, but two (2) hours).

The logic of *Murray* applies here. Movant states Weatherspoon visited her two (2) or three (3) times. *See* Civ. Dkt. 1-1 at 17. In these visits, Movant and Weatherspoon reviewed the following:

1. A video in which a representative from the Federal Bureau of Investigation ("FBI") was on the premises of Mt. Zion Home Health Agency, LLC ("Mt. Zion"), a home health care agency managed by Movant;

2. Text messages from Brenda Dawson ("Dawson"), a quality assurance nurse who previously worked at Mt. Zion;

3. Recorded voice conversations between Movant and Millicent Koroma, Movant's sister;[1] and

4. Documents Movant alleges FBI Agent Bill Freese ("Agent Freese") directed individuals to alter.

*See id.* at 17–18, 20; Crim. Dkt. 75 at 8.

Prior to trial, Weatherspoon also discussed the strength of the evidence against Movant, her likelihood of prevailing at trial, and the possibility of entering into plea agreements. *See* Civ. Dkt. 1-1 at 17, 29. Moreover, Movant was able to send Weatherspoon a list of witnesses, her travel information, bank documents, a sample of her signature, and the policies and procedures of Mt. Zion and the Medicare program. *See id.* at 21–22. The trial transcript reflects Weatherspoon took some of these pieces of evidence into account. *See* Crim. Dkt. 94 at 73 (Weatherspoon's closing arguments, which discussed travel documents). Additionally, over the four-day trial, Movant was able to pass notes to Weatherspoon. *See* Civ. Dkt. 1-1 at 23.

---

[1] Movant and Movant's sister appear to have the same surname, but with different romanizations. *See* Crim. Dkt. 75 at 3 (spelling Movant's surname as "Kroma"); Crim. Dkt. Crim. Dkt. 93 at 170 (spelling Millicent's surname as "Koroma").

Even though Weatherspoon "only" met with Movant two (2) or three (3) times, based on the topics she was able to discuss with Weatherspoon, Movant admits both she and Weatherspoon were able to discuss her case with considerable depth. *See* Civ. Dkt. 1-1 at 17–18. Thus, the record shows Movant was afforded the opportunity to convey the relevant facts to Weatherspoon, and Weatherspoon's purportedly "brief" time speaking with Movant was not constitutionally deficient. *See Murray*, 736 F.2d at 283; *Schwander*, 750 F.2d at 499.

Further, Movant makes it clear Weatherspoon provided a communication channel by which Movant could contribute her thoughts, some of which were incorporated into Weatherspoon's trial strategy. *See* Civ. Dkt. 1-1 at 17–18; Crim. Dkt. 94 at 73. Movant does not explain how returning her phone calls or responding to her text messages would have led Weatherspoon to perform differently and how such a difference would have substantially altered the outcome of her case. The record shows Movant was free to send additional evidence to Weatherspoon and communicate her theory of the case through voice mail and text messages. Upon receipt of these communications, Weatherspoon was entitled to apply his judgment and decide what to incorporate in his overall trial strategy. *See Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."). Because Movant has not shown how the communication channels between her and Weatherspoon were deficient such that she was deprived of a fair trial, the Court recommends denying habeas relief as to Ground 1. *See Murray*, 736 F.2d at 281–82.

## B. GROUND 2 – INADEQUATE INFORMATION ABOUT PLEADING GUILTY VERSUS TRIAL

Movant avers Weatherspoon improperly "advise[d] and encourage[d]" Movant to go to trial, "due to the overwhelming evidence to win the case." Civ. Dkt. 1-1 at 17. According to Movant, Weatherspoon informed her that the Government had offered a plea agreement, which, if accepted, would have imposed a sentence of thirty-three (33) months' imprisonment. *Id.* at 29. However, because "Weatherspoon believed that the defense evidence they already have . . . should all work in [Movant's] favor," Weatherspoon persuaded Movant to proceed to trial. *Id.* Movant further alleges Weatherspoon "impress[ed]" on her that he was friends with the husband of Camelia Elisa Lopez ("Lopez"), one of two Assistant United States Attorneys representing the Government in this matter. *Id.* at 17. Movant alleges Weatherspoon stated he "could fix things for [Movant], therefore, [Movant] should not worry about her trial." *Id.* at 17. According to Movant, Weatherspoon "was complacent" and "his relationship to [Lopez's] husband would tremendously help the defense to win the case, hence, no strategy was ever developed." *Id.* at 19. Movant believes if Weatherspoon provided "the actual correct options available," Movant would be serving a sentence of thirty-three (33) months' imprisonment, not the current sentence of ninety-seven (97) months' imprisonment. *Id.* at 31.

Because the Government's response did not adequately address this issue, the Court ordered the Government to file supplemental briefing and ordered Weatherspoon to file a signed and sworn affidavit. *See* Civ. Dkts. 10, 13, 14. Both the Government and Weatherspoon timely submitted their respective filings. Civ. Dkts. 11, 15. The Government's supplemental brief explains it offered Movant a plea agreement on three (3) different occasions. *See* Civ. Dkt. 11 at 2. Though the Government does not detail what the terms of the first plea agreement were, it states the second plea agreement laid out Sentencing Guideline stipulations that would have yielded an

offense range as low as thirty (30) to thirty-seven (37) months, and the third plea agreement articulated a final offer of thirty-seven (37) months. *See id.* Additionally, the Government characterizes Movant's allegations of backdoor dealing as "vague" and "baseless." *Id.*

> In his affidavit, Weatherspoon testifies:
>
> At no time did I ever indicate to Ms. Kroma that I could "fix things." I don't dispute that I told her I knew Ms. Lopez's husband, because I do. He is a criminal defense lawyer who I see from time to time at the Dallas County courthouse. Our communication is limited to casual greetings when we see each other. I never discussed any matters concerning the present case with him and I never told Ms. Kroma I had or would. Anything to the contrary is simpl[y] false. . . .
>
> [Y]es, the government offered Ms. Kroma a plea agreement and she rejected it. From the moment I met Ms. Kroma[,] she was fiercely adamant she had done nothing wrong. She and I discussed plea options on several occasions and it always came back to her belief she had done nothing wrong. I met with Ms. Kroma, her sister, her two daughters, and her pastor to discuss whether she want[ed] to accept a plea; and Ms. Kroma said she did nothing wrong and did not want to accept a plea. At no point was Ms. Kroma remotely close to accepting a plea. I discussed every offer made to her in great detail and she rejected every one.

Civ. Dkt. 15 at 1–2.

### 1. Allegations of Backdoor Dealing

A defendant may seek habeas relief on an alleged promise inconsistent with the attorney's actual conduct by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). If a defendant produces "independent indicia of the likely merit of her allegations," typically in the form of one or more affidavits from reliable third parties, she is entitled to an evidentiary hearing on the issue. *See id.* "If, however, the defendant's showing is inconsistent with the bulk of her conduct or otherwise fails to meet her burden of proof in light of other evidence in the record, an evidentiary hearing is unnecessary." *Id.*

Simply alleging that opposing counsel are friends will not, on its own, show the performance of defendant's counsel is constitutionally deficient. *See Garrison v. United States*, No. 2:08-cr-58, 2014 WL 3056523, at *5 (N.D. Miss. July 7, 2014). Here, Movant alleges Weatherspoon represented that he would use his friendship with Lopez's husband to "fix things" for Movant. *See* Civ. Dkt. 1-1 at 17. Thus, Movant has not only alleged Weatherspoon and Lopez's husband are friends, but that Weatherspoon promised Movant he would misuse his connections to compromise the integrity of the trial. While this allegation, as pled, is serious, Movant's allegations are conclusory and legally deficient, as they fail to identify a time, place, or location for this promise. *See id.* Nor does Movant name an eyewitness who can substantiate the accusation. *See id.*

On the other hand, the Government's supplemental brief denies that Lopez ever made an inappropriate deal with Weatherspoon. *See* Civ. Dkt. 11. To the contrary, the trial transcript shows Lopez and her co-counsel mounted a vigorous case against Movant over the course of four (4) days. *See* Crim. Dkts. 90, 91, 92, 93, 94. Further, in his affidavit, Weatherspoon testifies, "At no time did I ever indicate to [Movant] that I could 'fix things.'" Civ. Dkt. 15. Weatherspoon further testifies that he never discussed this case with the Assistant United States Attorney's husband, testifying Movant's claims are "simpl[y] false." *Id.* It is also clear from the trial transcript that Weatherspoon mounted a forceful defense on behalf of Movant. The record shows Weatherspoon cross-examined every Government witness, raised objections, and delivered a well-crafted closing statement. *See* Crim. Dkts. 91, 92, 93, 94, 95. It cannot be said that Weatherspoon was "complacent" in his representation of Movant, or that he had "no strategy" at trial. *See* Civ. Dkt. 1-1 at 19; *Strickland*, 466 U.S. at 687.

Because Movant's allegations of backdoor dealing are inconsistent against the weight of other evidence in the record, the Court does not find it necessary to order an evidentiary hearing on this matter. *See Cervantes*, 132 F.3d at 1106. Moreover, because Movant has not produced independent indicia of her allegations, the Movant has not shown Weatherspoon made a promise that led her to reject a plea agreement. *See id.* The Court now assesses whether Movant's refusal to accept a plea agreement warrants granting habeas relief.

### 2. Lapsed Plea Agreement

In cases where a plea offer has lapsed or has been rejected, "no formal court proceedings are involved." *Missouri v. Frye*, 556 U.S. 134, 143 (2012). "This underscores that the plea-bargaining process is often in flux, with no clear standards or timelines and with no judicial supervision of the discussions. . . ." *Id.* "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Id.* at 147. Ultimately, to show prejudice in the plea bargaining context, a movant must "show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Here, the record shows Weatherspoon informed Movant of three (3) different plea agreements. *See* Civ. Dkts. 11, 15. Movant refused each one, adamantly insisting she was innocent.

*See* Civ. Dkt. 15. Indeed, in her Motion, Movant continues to maintain she is "really" innocent of the charges. *See* Dkt. 1-1 at 29. Given the Government's supplemental brief, Weatherspoon's affidavit, and Movant's continued insistence of her innocence in her Motion, the Court does not find there is a reasonable probability she would have accepted a plea agreement. The Court recommends denying postconviction relief as to Ground 2.

### C. GROUND 3 – FAILURE TO INFORM MOVANT OF TRIAL STRATEGY

Movant complains Weatherspoon did not provide her with a "clear strategy" on how he "would attack the case." Civ. Dkt. 1-1 at 33. She appears to argue that, had Weatherspoon consulted Movant, Weatherspoon would have learned of an entrapment defense. *See id.* According to Movant, had Weatherspoon conferred with Movant about a trial strategy, he would have learned that all of Mt. Zion's employees "worked under the direction of FBI [A]gent Freese" and collectively organized to frame Movant. *Id.*

Because Ground 3 involves inadequate communication between Movant and Weatherspoon, the Court recommends rejecting Ground 3 for the same reasons as Ground 1. *See supra* Section III.A. Movant reports being able to send Weatherspoon a list of proposed witnesses and evidence. *See* Civ. Dkt. 1-1 at 21–22. Movant also reports being able to leave messages for Weatherspoon. *See id.* at 17. Thus, if Movant communicated an entrapment defense to Weatherspoon, it was within his province to make a "conscious and informed decision" on whether to advance that defense or not. *See Garland*, 717 F.2d at 206.

Additionally, Movant has not shown introducing an entrapment defense would have created a reasonable probability of an acquittal. *Cf. Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) ("Applying the prejudice prong in the context of counsel's performance at sentencing, we ask whether the petitioner has demonstrated a reasonable probability that the jury would not

have imposed the death sentence in the absence of errors by counsel.") (internal quotations omitted). Movant has merely alleged three (3) of her employees conspired to entrap her, providing no specifics as to how Weatherspoon was to prove this defense. *See* Civ. Dkt. 1-1 at 33. This allegation, without more, is insufficient to establish Movant was prejudiced. *See United States v. Kayode*, 777 F.3d 719, 724 (5th Cir. 2014) ("A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the *Strickland* test."); *United States v. Jones*, 614 F.2d 80, 81 (5th Cir. 1980) (holding conclusory statement that the government conspired to violate the defendant's constitutional rights insufficient).

Further, the trial transcript shows Weatherspoon elicited this entrapment defense in his direct examination of Movant. *See* Crim. Dkt. 93 at 150–51. The Court recommends denying habeas relief under Ground 3.

### D. GROUND 4 – FAILURE TO FILE SUBSTANTIVE PRETRIAL MOTIONS

Movant argues Weatherspoon's failure to file a motion to suppress, or other substantive motion, made him ineffective. *See id.* at 19–20. Movant avers she and Dawson, a quality assurance nurse, had previously worked together at Mt. Zion. *See id.* at 18, 20. Prior to working at Mt. Zion, Movant alleges Dawson "had issues" with another employer, the employer "got in trouble with the law," Dawson "became a person of interest" to the FBI, and Dawson brokered a deal with the FBI to "turn in" individuals "to avoid prison." *Id.* at 20. This deal, allegedly, incentivized Dawson to falsify records and forge Movant's signatures on documents at Mt. Zion. *See id.* These forged documents were then introduced into evidence at trial to incriminate Movant. *Id.* at 18. Movant further contends that when the FBI obtained these documents, this acquisition constituted "illegal access," and, under the fruits of the poisonous tree doctrine, the documents should have never been introduced. *Id.* at 18, 20. Thus, Movant believes Weatherspoon should have filed a substantive

motion, such as a motion to suppress, to prevent the introduction of the incriminating documents. *See id.* at 19–20.

The Court construes Movant's argument as advancing an unconstitutional search and seizure challenge. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (acknowledging the United States Supreme Court has "insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed"). To succeed on an ineffective assistance claim for failure to raise a Fourth Amendment issue, Movant must meet the same cause and actual prejudice standard set forth in *Strickland*. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). In addition, to demonstrate actual prejudice when a movant's ineffective assistance claims are based on counsel's failure to file a motion to suppress, "the movant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent excludable evidence. . . ." *Id.*

Here, the Court cannot find any indication of a meritorious Fourth Amendment argument. It is not apparent how Movant's narrative about Dawson's collaboration with the FBI implicates the Fourth Amendment, as the government frequently collaborates with informants for information without violating the U.S. Constitution. *See, e.g.*, *United States v. Martinez*, 894 F.2d 1445, 1447 (5th Cir. 1990) (professional informant collaborated with police about scheme to forge citizenship documents).

With respect to Agent Freese's "illegal access" of Mt. Zion documents, the trial transcript shows Agent Freese visited Mt. Zion only once in April 2012. *See* Crim. Dkt. 93 at 58, 97. After knocking on the door, Agent Freese spoke with Flory Mariana ("Mariana"), who identified herself as the secretary or receptionist of Mt. Zion. *Id.* at 62. After Mariana informed Agent Freese that Movant was not available, Agent Freese left his business card. *Id.*

Nothing about Agent Freese's testimony suggests he conducted an unreasonable search or seizure under the Fourth Amendment. *See* U.S. CONST. amend. IV (creating a "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"). When Agent Freese visited Mt. Zion, he did not access, examine, or obtain any papers from this one visit, let alone search a person, house, or effect. *See* Crim. Dkt. 93 at 58, 97. Had Weatherspoon filed a motion to suppress based on this visit, such a motion would have been frivolous. Failure to press a frivolous point will not violate the Sixth Amendment. *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995).

To the extent Movant argues Agent Freese unconstitutionally obtained documents in other parts of his investigation, Movant has not met her burden of alleging, with sufficient specificity, how these acquisitions violated the Fourth Amendment. As it stands, Agent Freese's testimony reflects he acquired these documents through lawful means. *See* Crim. Dkt. 93 at 63–67, 83. For example, Agent Freese testified he obtained documents by issuing a subpoena, reviewing Medicare claims stored on a database, emailing individuals who consented to providing materials, and executing a search warrant. *See id.* Nothing about this testimony, or Movant's conclusory statement, indicates a Fourth Amendment violation occurred. Because Movant has not presented a meritorious Fourth Amendment argument, the Court recommends denying habeas relief as to Ground 4. *See Kimmelman*, 477 U.S. at 375.

### E.  GROUND 5 – FAILURE TO CONDUCT AN ADEQUATE PRETRIAL INVESTIGATION

Movant claims Weatherspoon acted deficiently because he did not adequately investigate Movant's case. *See* Civ. Dkt. 1-1 at 21. Movant "would have liked" for Weatherspoon to research the documents she provided and offer at least seventy percent (70%) of them as evidence "to at least attempt to win." *Id.* at 22. Movant also states that, had Weatherspoon conducted a proper

investigation, he would have been able to impeach two (2) witnesses. *Id.* at 23. Movant states an adequate investigation would have revealed Wilbur Clark ("Clark") was "a "brutal diabetic patient" and he had a diabetic pump on the right side of his stomach. *Id.* at 23. Movant also avers another witness, Gregory Newsome ("Newsome"), lied under oath. *Id.* According to Movant, when Newsome testified Movant offered him $1,000 to not report her, with Newsome's mother as an eyewitness, Newsome lied under oath. *Id.*

A defendant's claim that her trial counsel failed to investigate her case cannot be upheld where the allegation is too speculative to overcome the strong presumption of competency and high burden of actual prejudice required to prove ineffective assistance of counsel. *Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997). A defendant who alleges a failure to investigate her case on the part of her counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Gregory v. Taylor*, 601 F.3d 347, 354 (5th Cir. 2010). "[W]hen the facts that support a certain potential line of defense are generally known to counsel because of what defendant has said, the need for further investigation may be considerably diminished altogether." *Strickland*, 466 U.S. at 691.

"In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 521.

### 1. Investigation of Documents Provided by Movant

Movant explains she provided Weatherspoon Mt. Zion's accounting books, a list of patients and their addresses, vendors, employee addresses, "billing company," travel information, bank documents, a sample of her signature, Mt. Zion's policy manuals, and a Medicare handbook. Civ. Dkt. 1-1 at 21–22. Aside from this list, Movant never explains how further investigation of these documents would have helped Movant at trial. Movant has not met her burden of showing, "with specificity," what the investigation would have revealed and how it would have altered the outcome of the trial. *Gregory*, 601 F.3d at 352.

### 2. Wilbur Clark

At trial, Clark testified that he did not have diabetes and has never received insulin injections, let alone 1,000 of them. *See* Dkt. 93 at 147–51. On direct examination, Movant testified Clark was an insulin-dependent diabetic, and Mt. Zion's staff would travel to Clark twice a day to provide him insulin shots. *See* Crim. Dkt. 93 at 162.

In the Motion, Movant avers Clark lied under oath, as he was a "brutal diabetic," and further investigation would have led to a more effective impeachment of Clark. *See* Civ. Dkt. 1-1 at 23. But Movant fails to identify what additional information Clark would have uncovered in this investigation and how that information constitutes performance so deficient such that Weatherspoon ceased to be counsel. *See Gregory*, 601 F.3d at 354. The record shows Weatherspoon was aware Clark may have lied under oath, and Weatherspoon solicited Movant's testimony to impeach Clark. *See* Crim. Dkt. 93 at 162. Weatherspoon's decision not to further impeach Clark is a matter of trial strategy, which will not constitute ineffective assistance. *See Murray*, 736 F.2d at 282 (holding the failure to offer cumulative evidence or testimony will not constitute ineffective assistance).

### 3. Gregory Newsome

At trial, Newsome testified that, after returning from Colorado, he saw that $27,000 had improperly been charged on his Medicare account. *See* Crim. Dkt. 92 at 109–10. Newsome testified he called Movant and offered an initial bribe: "I told her that, you know what? [Movant], give me $5,000 I won't say anything. We'll go our separate ways." *Id.* at 110. Newsome then testified Movant arrived at his house and made a counter-bribe, so to speak: "[Movant] came to my house. And she says, Greg, here's $1,000. Here's what you can do now. If you get extra people, everybody you get for us, I'll give you $300. I said okay. After that, that's when I called Medicare." *Id.*

On cross-examination, Newsome admitted to having a criminal history and offering the initial bribe. *Id.* at 111–12. Weatherspoon cast further doubt on Newsome's testimony, asking Newsome whether "we have anything to back up the fact that you were given any money" and whether Newsome had any proof Movant offered Newsome money. *Id.* at 114. In response, Newsome could only name his mother as an eyewitness, identifying no other proof of his allegations. *Id.*

As with Clark, the record shows Weatherspoon impeached Newsome. Movant does not explain what evidence an "adequate" investigation would have yielded to more effectively impeach him, and how such evidence would have created a reasonable probability that the trial would have resulted differently. *See Gregory*, 601 F.3d at 354. Overall, the Court recommends denying habeas relief as to Ground 5.

### F. GROUND 6 – FAILURE TO ATTEMPT TO NEGOTIATE A FAVORABLE PLEA AGREEMENT

Next, Movant argues Weatherspoon failed to attempt to negotiate a favorable plea agreement. *See* Civ. Dkt. 1-1 at 26. To the contrary, the Motion states Movant was informed of a

plea agreement proposing a term of thirty-three (33) months' imprisonment. *See id.* at 29. The Government states it sent Weatherspoon three (3) plea agreements, all with favorable terms. *See* Civ. Dkt. 11. Weatherspoon testified to informing Movant of these plea agreements, with Movant's family and pastor sitting as eyewitnesses to one such discussion. *See* Civ. Dkt. 15. The record clearly reflects Weatherspoon made attempts to negotiate a favorable plea agreement. Ground 6 is without merit.

### G. GROUND 7 – FAILURE TO CALL WITNESSES AND PRESENT EVIDENCE AT TRIAL

Under Ground 7, Movant identifies four (4) actions she wished occurred at trial. First, she argues Weatherspoon should have offered the testimony of a handwriting expert. *See* Civ. Dkt. 1-1 at 22. Movant believes the handwriting expert would have demonstrated the documents incriminating Movant were forged. *Id.* at 34. Second, Movant appears to argue she received ineffective assistance when Movant's sister, Millicent Koroma ("Koroma"), did not testify at trial. *See id.* Third, Movant argues Weatherspoon should have called Dawson, the quality assurance nurse who allegedly conspired with the FBI, to testify. *See id.* at 18–20, 34. Fourth, Movant argues travel documents would have shown Movant was out of town on the same days certain treatments were administered. *Id.* at 34. Movant contends Weatherspoon's failure to carry out these four (4) acts prejudiced Movant. *Id.*

#### 1. Handwriting Expert

The decision to call witnesses is a trial strategy within the trial counsel's domain. *United States v. Harris*, 408 F.3d 186, 190 (5th Cir. 2005), *cert. denied*, 546 U.S. 919 (2005); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Complaints of uncalled witnesses are disfavored in federal habeas corpus review because allegations of what the witness would have testified to is speculative. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). For this reason, courts view

such claims with skepticism, especially where the only evidence of what a witness might say is from the petitioner. *See Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). The petitioner must show that the testimony would have been favorable and that the witness would have testified at trial. *Alexander*, 775 F.2d at 602.

Movant has not shown Weatherspoon's "failure" to call a handwriting expert amounted to constitutionally deficient performance. Throughout the four-day trial, the Government identified Movant's purported signature "thousands and thousands of times throughout all the evidence." *See* Crim. Dkt. 94 at 73 (Government's closing argument); *see also* Crim. Dkt. 91 at 176, 177, 190–92; Crim. Dkt. 92 at 13, 16, 24, 26–29, 33, 38–41, 69, 79, 81, 87, 109, 224; Crim. Dkt. 93 at 30, 39–40, 44–45, 59–61, 73, 85, 91–92 (moments in which Movant's purported signature was identified for the jury). Movant has not designated which of these numerous signatures were forged. Without this information, the Court cannot begin evaluating what kind of prejudice, if any, Movant suffered.

Additionally, many documents bearing Movant's purported signature were admitted into evidence and projected for the jurors to compare for themselves. *See id.* Weatherspoon then impeached a witness who identified these signatures, soliciting the witness's admission that she lacked first-hand knowledge of these signatures' creation. *See* Crim. Dkt. 92 at 100. Weatherspoon attempted to raise doubts on these signatures during closing arguments. *See* Crim. Dkt. 94 at 68. Accordingly, the record demonstrates Weatherspoon worked to cast doubt on the genuineness of these signatures. His decision not to further undermine the purported veracity of these signatures did not constitute ineffective assistance. *Murray*, 736 F.2d at 282 (holding the failure to offer cumulative evidence or testimony will not constitute ineffective assistance); *see also United States v. Dillon*, No. 05-314, 2011 WL 1235157, at *9 (E.D. La. Mar. 31, 2011) (finding no prejudice

where counsel did not offer handwriting expert's testimony). Indeed, sometimes less is more, and the Court is deferential to such strategic decisions. *See Murray*, 736 F.2d at 282 (noting counsel may have determined cumulative testimony was unnecessary); *Harrington v. Richter*, 562 U.S. 86, 106 (2011) (noting there are "countless ways" to provide effective assistance in any given case). Movant has not shown how failure to call a handwriting expert amounts to constitutionally deficient performance, or that she was prejudiced without such testimony.

### 2. Movant's Sister

With respect to Movant's sister, Koroma, Movant has not shown Koroma would have been willing to testify, let alone what Koroma would have stated in her testimony. In fact, the trial transcript reflects Koroma obtained counsel and invoked her Fifth Amendment right not to be compelled to provide self-incriminating testimony. *See* Dkt. 93 at 170. The Court does not find Weatherspoon's "failure" to call Koroma to testify constitutes ineffective assistance.

### 3. Brenda Dawson

So, too, with Dawson. Movant states, "Brenda Dawson was on [Movant's] List of Witnesses, who lives only 5 miles from [Movant's] house and she refused to answer the phone or door when she agreed to testify." Civ. Dkt. 1-1 at 34. Based on Movant's own representations, it appears Dawson was not willing to testify on behalf of Movant. Weatherspoon's "failure" to call Dawson as a witness cannot form the grounds for postconviction relief. *Alexander*, 775 F.2d at 602.

### 4. Travel Documents

Movant argues Weatherspoon should have introduced travel documents at trial. *See* Civ. Dkt. 1-1 at 34. Such documents would have shown Movant was not present when certain documents were signed, thereby exculpating Movant for certain schemes. *See id.* The trial

transcript establishes Weatherspoon impeached certain witnesses and solicited admissions that certain documents bore Movant's name, despite her being outside of the United States. *See* Crim. Dkt. 93 at 76, 89–91. Thus, the jury had information that certain billings occurred while Movant was out of the country. *See id.* Counsel also raised this issue again in his closing arguments. *See* Crim. Dkt. 94 at 68. The jury, armed with this information, still convicted Movant. Dkt. 94 at 94–96. Movant has not shown that emphasizing this point further would have had a reasonable probability of changing the outcome of the trial. *Murray*, 736 F.2d at 282; *Dillon*, 2011 WL 1235157, at *9.

Overall, Movant has not shown she was prejudiced by counsel's alleged failure to introduce certain documents into evidence or call certain witnesses. The Court recommends denying postconviction relief as to Ground 7.

### H. GROUND 8 – POOR DIRECT EXAMINATION OF WITNESSES

Movant complains Weatherspoon "poorly" questioned two witnesses who testified in her case-in-chief. Dkt. 1-1 at 34. Movant provides no further elaboration for Ground 8.

At trial, Weatherspoon called Gerald Burke ("Burke") and Debora Abbey-Nwokoye ("Abbey-Nwokoye") to testify on behalf of Movant. Crim. Dkt. 94 at 16, 21. Burke testified as a former patient of Movant, generally stating Movant and other Mt. Zion employees provided him care, all of which was properly reported to the Medicare program. *See id.* at 16–21. Abbey-Nwokoye served as a character witness, and testified that Movant was truthful. *See id.* at 21–22.

Because Movant does not state, with specifics, what additional testimony Weatherspoon should have solicited, Movant has not met her burden to establish Weatherspoon's direct examination was constitutionally inadequate or that she was prejudiced. *Alexander*, 775 F.2d at 602.

## I. GROUND 9 – FAILURE TO ADEQUATELY CROSS-EXAMINE WITNESS

Next, Movant argues Weatherspoon did not adequately cross-examine the Government's witnesses. Dkt. 1-1 at 35. According to Movant, had Weatherspoon done a constitutionally sufficient job, Weatherspoon would have shown that some witnesses were "repeat offenders in the prison system" or doctors who had committed malpractice. *Id.* Movant theorizes these facts would have rendered the witnesses' statements "unreliable." *Id.* Movant alleges Weatherspoon "failed to properly impeach many of those witnesses by just passing them up." *Id.*

Because decisions regarding cross-examination are strategic, they usually "will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (5th Cir. 2002). A defendant cannot establish ineffective counsel based on the cross-examination of a witness absent a showing that further impeachment would have changed the jury's verdict. *Russell v. Collins*, 944 F.2d 202, 206 (5th Cir. 1991). A defendant must establish what testimony further cross-examination would have elicited and how it would have changed the outcome of the case to establish a claim of ineffective assistance of counsel. *Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir. 2009).

At trial, Weatherspoon cross-examined every Government witness. *See* Crim. Dkt. 90 at 3–6. Not once did Weatherspoon pass a witness without asking questions. *See id.* Further, the parties solicited the criminal history of four witnesses. *See* Crim. Dkt. 92 at 111, 151 180, 200. Even though four witnesses had criminal histories, the jury returned a guilty verdict. It is unclear how emphasizing this point further would have favored Movant.

With respect to certain witness's history of medical malpractice, it is unclear how Weatherspoon's purported failure to solicit this information would have created a substantial probability of altering the outcome of the trial. *Day*, 566 F.3d at 540 (5th Cir. 2009). The Court is not convinced that, in this case, failing to solicit a witness's medical malpractice history constitutes

such a grave error that the entire trial's fairness is undermined. *See Strickland*, 466 U.S. at 694.

The Court recommends denying habeas relief as to Ground 9.

### J. GROUND 10 – FAILURE TO COMMUNICATE ABOUT THE PRESENTENCING REPORT

Movant avers she and her family were unable to make any contact with Weatherspoon to

discuss her presentencing reports:

> On the sentencing day, Weatherspoon never came back to the holding area to talk to [Movant]. So when she was brought out, Weatherspoon gave her papers to sign for the video sentencing and [Movant] objected regarding the two separate PSR's that were not acceptable to her. Then Weatherspoon advised [Movant] to keep the peace with the Judge or she would be sentenced to a higher term.

*Id.* at 36.

As the Court explained for Grounds 1 and 3, "a broad-based assertion that counsel failed

to communicate with her fails to raise a cognizable issue." *United States v. Milburn*, 2011 WL

13285310, at *4 (W.D. Tex. Oct. 7, 2011); *see also Williams v. United States*, No. 4:16-cv-290-

RWS-KPJ, 2018 WL 6579363, at *3 (E.D. Tex. Oct. 11, 2018) (finding complaint about two,

thirty-minute sessions "racing through" the presentencing report insufficient for habeas relief),

*report and recommendation adopted*, 2018 WL 6579913 (E.D. Tex. Dec. 13, 2018).

However, at the sentencing hearing, Movant informed the Court that Weatherspoon had

explained the sentencing report to her, Movant herself had read the sentencing report, and Movant

fully understood its contents. *See* Crim. Dkt. 89 at 2. Because a statement made in open court

carries a strong presumption of verity, the Court recommends denying habeas relief as to Ground

10. *See United States v. Abreo*, 30 F.3d 29, 31 (5th Cir. 1994).

### K. GROUND 11 – FAILURE TO FILE OBJECTIONS TO THE PRESENTENCING REPORT

Movant argues Weatherspoon should have objected to the 14-level enhancement applied to her sentencing calculation. *Id.* at 37. Movant also contends Weatherspoon should have questioned how the presentencing report reached its restitution figure of $491,000. *Id.*

Failing to object to a presentencing report will not constitute deficient representation unless a basis for objection exists. *United States v. Stamper*, No. 11-00023, 2015 WL 12732900, at *4 (W.D. La. July 31, 2015); *Daranda v. United States*, No. 1:07-cr-10022, 2012 WL 2952145, at *11 (W.D. La. June 15, 2012). A § 2255 petitioner must identify a non-frivolous issue that could have been raised in an objection to the presentencing report. *See Hopkins v. United States*, Nos. 3-07-cv-1031-N, 3-04-cr-135-H, 2007 WL 4569697, at *3 (N.D. Tex. Dec. 28, 2007).

The objection Movant identifies is frivolous. Pursuant to the Sentencing Guidelines, a defendant's sentencing calculation will receive a 14-point enhancement where a loss resulting from larceny, embezzlement, and other forms of theft is more than $550,000, but not more than $1,500,000. *See* U.S.S.G. § 2B1.1(b)(1)(H). Here, the Court's recalculation of the restitution owed by Movant was $675,153.06. *See* Crim. Dkt. 105. Accordingly, the 14-point enhancement was proper under the Sentencing Guidelines. Ground 11 is without merit.

### L. GROUND 12 – FAILURE TO COMMUNICATE ABOUT DIRECT APPEAL

In Ground 12, Movant argues "[w]ithout Movant's contribution or her opinions," her attorney at the appellate level, Garland Don Cardwell ("Cardwell"), rendered ineffective assistance. *See* Civ. Dkt. 1-1 at 39. Had Cardwell listened to Movant, Movant believes Cardwell would have "object[ed] to [Movant's] sentence due to her trial conviction."

As with Grounds 1, 3, and 10, brevity of consultation time does not, on its own, constitute ineffective assistance of counsel. *See Murray*, 736 F.2d at 282; *see* Sections III.A, C, J. Movant

has not established Cardwell's allegedly inadequate communication constitutes ineffective assistance.

### M. GROUND 13 – FAILURE TO "RAISE STRONGER ISSUES" ON APPEAL

Movant appears to argue Cardwell should have argued for a reduction in Movant's imprisonment sentence, not just a reduction in her restitution amount. *See* Civ. Dkt. at 40.

An appellate counsel will not be deemed ineffective merely because he does not raise an issue requested by a defendant. *Hamilton v. McCotter*, 772 F.2d 171, 182 (5th Cir. 1985). An appellate counsel need not raise every non-frivolous issue on direct appeal, but should instead present solid, meritorious arguments based directly on controlling precedent. *Ries v. Quarterman*, 552 F.3d 517, 532 (5th Cir. 2008).

Here, Cardwell had access to the entire trial record, including all exhibits admitted into evidence and all five volumes of the trial transcript. Cardwell possessed the materials needed to argue all issues preserved on appeal. Further, Movant has not identified what aspect of Movant's imprisonment sentence constituted a non-frivolous argument for appeal. *Hamilton*, 722 F.2d at 182. In failing to advance this information, Movant has not met her burden in establishing ineffective assistance of counsel. *See id.*

### IV.    GOVERNMENT'S CONCESSION THAT MOVANT'S SENTENCE SHOULD BE REDUCED BY TWO POINTS

Lastly, in Ground 14, Movant contends the Government admitted Movant's sentencing calculation was incorrectly calculated. *See* Dkt. 9. After thoroughly reviewing the criminal docket, the civil docket, and the appellate docket, the Court cannot locate any such concession. The Government's supplemental brief states it "could not find any record where the prosecution stated that two years were erroneously added" to Movant's sentence. *Id.* at 3. Moreover, the Fifth Circuit found the Court only erred when it calculated Movant's restitution amount, affirming the Court's

sentence "[i]n all other respects." *See Kroma*, 717 F. App'x at 491. Ground 14 for habeas relief is without merit.

## V.     <u>CONCLUSION</u>

Movant has failed to show her trial and appellate counsel's performance were constitutionally deficient. Movant also fails to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Lastly, Movant has not shown, where in the record, the Government conceded two (2) points were erroneously added to Movant's sentencing calculations. For these reasons, the motion should be denied and the case dismissed.

## VI.     CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, it is respectfully submitted that this court, nonetheless, address whether Movant would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional

claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor could they find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336–37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that Movant is not entitled to a certificate of appealability.

## VII.   RECOMMENDATION

It is accordingly recommended that the motion to vacate, set aside, or correct sentence be **DENIED** and the case be **DISMISSED** with prejudice. It is further recommended that a certificate of appealability be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) days to fourteen (14) days).

**So ORDERED and SIGNED this 2nd day of March, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE